This is a case on review of the district court's denial of the appellant's motion to withdraw his guilty plea, which was brought prior to sentencing. The standard under Rule 11 and the law of the circuit is that the right to withdraw a plea is to be granted if there is any fair and just reason. And some of the statements from this court state that the plea should be freely allowed to be withdrawn and that this is a generous rule to be liberally interpreted. In this case, although the court got the standard that would be used to assess whether a plea should be withdrawn along the lines that I've just articulated, the court was clearly wrong in finding that there was no basis, no plausible reason to justify the withdrawal of this guilty plea prior to the sentence. Now, if you were to win here, what would happen, I gather, and what's peculiar here is that at least at this point you're centering on a motion to suppress based on the statutory exception. Correct. And we know what this judge is going to rule on that because she's already told us. And she's already ruled on that in a – that way in another case. All right. So you're going to go back and you're going to make that motion. You're going to lose. I'm going to ask this court to remand it to another judge for the very reasons you articulated. This case has been, since the motion that was brought in September of last year, the reinforcement for our argument has become much stronger because last year the court was saying there's no evidence to show a plausible basis that this recording was made for a criminal purpose. Well, in Mr. Pellicano's trial he got up an opening statement and said, I recorded those conversations as part of my business to keep a record so I would know what was going on. And then, of course, he was – that was part of his defense to his RICO indictment. He was convicted. Well, he says he made the recordings to know what's going on. That doesn't indicate a criminal or tortious purpose. And a point of fact, you have not indicated in your papers anything specific about a criminal or tortious purpose as affects Mr. McKiernan. Well, the context which the government has alleged in the indictment, since proven correct by a jury earlier this year, is that Mr. Pellicano ran a racketeer-influenced corrupt organization, of which one of the major components was his repeated wiretapping and tape recording surreptitiously persons for furtherance of his criminal trial. Well, that's different from wiretapping or recording your own clients' conversations. They may or may not have been used for a criminal or tortious purpose, and you have made no indication of how it would be so. And also, you have not indicated in your papers, seems to be a factor, that your client is, in fact, not guilty of lying to the FBI agent. Well, the law in this circuit is clear that there is no requirement for showing of innocence. I believe that's in it. Well, maybe no requirement, but it certainly would be helpful to your case. Well, it might be helpful in a theoretical construct, but upon remand, if this motion is successful, that will eliminate the bulk of the government's case because- What has happened that shows that he was using his clients, recording of his clients' conversations for a tortious or criminal purpose? Well, the purpose of his phone calls was- The purpose of his phone contact with his clients was for a criminal purpose. I don't think there's any dispute about that. That is, the substance of their discussion was so that Pelicano could go out and- But that's not the standard, as I understand it, right? The standard isn't whether the purpose of the phone calls was for a criminal purpose. It's the purpose of the recording. Okay, so this is, as I've made the analogy, this is like record-keeping in a drug case. As Pelicano stated in his opening statement in his own defense, I kept this as part of my record-keeping to remind myself of what I needed to do. What he needed to do was criminal. So if you're keeping records of what you need to do, that is certainly your tape recording for a criminal purpose so that you could go back to it and determine exactly the contours of what you had to do. Because as he said in his opening statement in his own defense, I recorded 50 phone calls a day. So this was his manner of record-keeping for what he needed to do in pursuit of his racketeer, corrupt, influenced organization. That is, to wiretap all these- Is there any case law saying that that's within the exception? That, well, there are not a lot of cases on- On the exception. On the exception. Well, the question is, is that a plausible argument? Is it a plausible argument that could have justified- Could have justified- Had he known about it? Yes. That's another point that- And you say there's no new theory, which is at least imaginative or creative. And you say there's no law on whether that constitutes a criminal or tortious purpose to use that for record-keeping in connection with a criminal enterprise. I take back that statement. United States v. Vest, V-E-S-T, cited by this court in the Chandler case, is a case where it's out of the First Circuit, I believe, but this court cited it in Chandler, which is cited in the Brace. In that case, a fellow named Waters was bribing a police officer, and he did the bribe through an intermediary, another police officer by the name of Vest. And so when they're having these discussions about passing the bribe money on to the ultimate recipient, another police officer, Waters was tape recording them. And then he passed the money on to Vest, and he would pass it on to the ultimate recipient. Well, it turned out Waters didn't get what he wanted from his bribe. He wanted basically a pass on some criminal conduct. And so he turned over his secretly recorded tape to the prosecution, and Vest got prosecuted for participating in this bribe conspiracy. And so the question was under 252D, was Waters' tape recording secretly of his conversations with Vest part of the exception to the statute which warranted the suppression? And the court there held that it did because it was part of a number of several of the reasons given were safekeeping and recordkeeping of his criminal conduct. So there is a specific example of a case in the First Circuit cited with approval by this Court which substantiates the basis, the plausible basis for believing that Mr. McTiernan, had he known about this, would have refrained from entering his guilty plea. Now, all we know about whether he was in fact given this information by his original lawyer is a general statement by his original lawyer that he told him there was no basis to suppress. But we have no knowledge that the original lawyer discussed this question with him. Is that right? One way or the other, we have no knowledge. Well, we have his statement that he did. Here's what the record reflects. New counsel got the trial file of preceding counsel, looked at it, and there was nothing about the 25112D issue in it. There was no memorandum or memorialization of any contact with the defendant about it nor research about it. And the defendant, is there a declaration from the defendant that he didn't discuss it with you? Yes. Absolutely. And then there's a declaration from the lawyer, you or somebody else, saying, I've looked all through the file. There's no indication of it. Well, there's more than that.  But then new counsel did the following. When he knew that this motion was going to be brought and that they were on a short timeline, he called successor counsel, who was then being represented by an attorney. And he said, I need to know from your client the following. Did he not fail to advise Mr. McTiernan of the 25112D defense? And that is at CR 233. That affidavit by new counsel where he put that question directly to Mr. Carlson, the previous counsel. And previous counsel did the following. In his declaration, he said, quote, I did not see any basis for suppressing the tape recording under the wiretap statute, and I couldn't predict that any such basis would be discovered if Mr. McTiernan had decided to reject the plea. That he was he was confronted with a motion which he knew about, that 2511 was the basis of the motion withdraw. He specifically responded to McTiernan's declaration saying, I never was advised of any defense. He was asked by McTiernan's new counsel, did you advise him about this? He doesn't respond to that. All he says is, oh, well, I couldn't predict if a reason could be a guideline. The government maintains that even if this were not this were suppressed, it wouldn't affect the trial. Now, A, does that matter? And B, what about their contention? One, it doesn't matter. That's a remedy that would follow, one, if the plea is withdrawn. And then second, if it is withdrawn, the litigation over this 2511. Because there's no prejudice prong at this point. That's one. That's what their argument is kind of like a harmless air down the road. That we'll still be able to get this in. But that's going to depend on other litigation about the breadth of 2515, which is the derivative use argument. And how that interacts with the plea agreement and so on. That's right. Because Mr. Agent Ornelas would have never made a phone call on February 13, 2006 to Mr. McTiernan and said, by the way, I'm investigating a Pelicano. Did you ever involve yourself in any wiretap activity with him? That call would not, that would have been suppressed. And I, I mean, this is a peculiar question. But the one thing that, one other thing that bothers me about all this is it's hard for me to see how your client's going to be better off. But I gather that you guys have been over this and you think you're better off. Or he thinks he's better off. Yes. We wouldn't be here unless that decision were made. Could you take me through the timeline starting with the plea and finally up to the motion to withdraw, how much time do we have elapsed and what went on in between? Certainly. The, the phone call from the agent was made to Mr. McTiernan on February 13. You're talking about the plea of guilty. From the plea of guilty on. From the plea of guilty, that would have been on April 17, 2006. Then there were two continuances that were stipulated and they're under seal. And they are at CR 22. The first one was sealed on April 28, 2006. And the second one came on the continuance date. In fact, cooperation questions were being raised during that period. Correct. And they were stipulated continuances. It's not in the record exactly what the purpose of those continuances are.  All right. In any event, that went to July, July. That last continuance was, I believe, to July 2007. In June, Mr. McTiernan hired new counsel. And then he learned about this defense. And I might add that. When was the motion made? The motion was made in September. Well, actually, it came in this form. On September 6th, the defense made a motion for a continuance based on this issue. And they filed the motion formally on September 10th. So it ran from June to September. Is that right? The time period? New counsel came on, I believe, in the record. It was June 28th. There was an email from Mr. Neal. At some point, new counsel said, we're not going to withdraw the plea. We are going to withdraw the plea. At some point, he said, we're not going to withdraw the plea. Oh, initially, on June 28th, when he said, I'm announcing I'm coming in. I've just come in. We have no intent to withdraw the plea. However, then he got into the case, figured there was a defense, and discussed that with his client and made the motion. You said on June 28th, you had just been hired. And your intention, your request for a plea was to learn about the case. You needed time. And you had no intention at that time to withdraw the plea. Right. There was no, counsel did not have any basis. How long after you had been hired was that motion filed? Your Honor, it wasn't me. But the motion was filed June 28th, July, August. Two months and five days, or two months and three days. Not you. New counsel asked for continuance. New counsel asked for the continuance formally on September 5th and attached the motion to withdraw the plea as a basis for the continuance. You said in your... And I still don't understand. New counsel was hired on July 28th. On or about June 28th? June 28th. And the first request that new counsel made for continuance was September? I have in my notes actually that on August 22nd, Mr. Neal called the government concerning the motion to withdraw. So that's the first notion that the government would have had that the new counsel had discovered. How many counsel were there? At that time, it was just one. So the first counsel was Mr. Curran? Correct. Who's Mr. Neal? Mr. Neal came on and made that contact on June 28th, 2007 with the government. Now after, I believe it was after the decision to withdraw the plea took place, two other attorneys were added for the purposes of joining the defense team. Mr. Grimes was part of the new group? Was part of the new group, yes. He followed and was in addition to Mr. Neal. And your new counsel again? I'm on the appeal only. The brief said, I think, but I didn't see any substantiation of this, that by November it was clear that there was, that the sentence was not going to be, was going to be a custodial sentence because the proffer seemed to be falling apart. Is there, where in the record could we find that? The government has stated to the court on page 18 of its brief that at no time did it ever tell McTiernan that he was not going to, that he was going to get a noncustodial sentence. It's never been their position that they represented that. The, McTiernan in his declaration never says that he was promised a noncustodial sentence, nor does he say that's a basis for withdrawing the plea. But the judge didn't believe that. That really was the case. Well, and the issue there is, yes, the government pressed heavily that the reason behind this motion was that McTiernan just was dissatisfied with the likelihood of a custodial sentence. But given the fact that the cooperation, as it were, fell apart early on in this matter, it was. That's the part I'm trying to find substantiation for. How do we know that? There is a, there is a memorandum that we cited to. It was unfortunately first attached to the bail motion, but it was a memorandum of Mr. Carlton in which he said that the government is dissatisfied with the cooperation and in a sense custody is likely. And this was in December 2006. The government has, again, has never said that it was telling Mr. McTiernan that there was a likelihood of noncustody. And that's certainly clear at the plea hearing, which took place in April 17, 2006, that there were no promises of noncustody. This is what, this whole idea of his true motivation being to escape a custody likelihood is a total red herring because he's never said that. There's really no logical reason to. Wasn't that the purpose of these ongoing discussions regarding a, regarding a plea agreement and cooperation and so forth? Actually, there were no ongoing discussions. After the proffer agreement, off the proffer, that took place in March 16 of 2006, I don't believe there were any other meetings. So what were the adjournments for? I think it was the government seeking to, they wanted, they believed what McTiernan said, but they did not think that he was telling them everything and they wanted more information. That's essentially it. And so that never happened. And McTiernan certainly knew those importunities for more information were not going to change his mind. And thus, there was a, this is the red herring issue. And I might say that if he's got a plausible basis for withdrawing his plea, and that is the 2511 motion, which he proffered as the centerpiece of his motion to withdraw. Well, that's sort of odd because, in fact, during the argument on the motion to withdraw, it wasn't even mentioned. I mean, it is a little peculiar because it seems to have, you know, raised like a phoenix, but it wasn't really the point of the motion to begin with. Well, it's the centerpiece of the written motion that was filed. Well, but it wasn't discussed at all in the oral discussion. It wasn't mentioned. Well, they did get diverted on other matters which were unfortunate. And as you know, by the time of the bail hearing, this is the only issue that was raised as a substantial issue warranting bail on appeal. And the Court granted it on that basis, and it's the only issue we've raised before this Court. The judge described the grounds as many, varied, and mutable. Well, not this one. Not this one. This is not many, varied, or mutable. No. I'll reserve, if I have a minute or a moment to respond. Thank you very much. Thank you. Good morning. May it please the Court. Daniel Levin on behalf of the government. It was more than 17 months after his guilty plea, and it was just a couple weeks after the government filed its sentencing position seeking custody. The defendant moved to withdraw. And he moved to withdraw based on a host of reasons, reasons that changed between the motion papers and the hearing. And now he's finally settled on he wants to withdraw because he wants to bring a motion under 25112D to suppress under the wiretap statute. Now, this is a motion that was available all along to the defendant. I don't think there's any dispute that to succeed here, the defendant has to show that he wasn't advised of this motion, not just that it was a plausible motion, but that he wasn't told about it. That's the predicate question. And that question depends on the defendant's credibility in what he's saying. Well, I think the lawyer, original lawyer, doesn't say anything about that motion. He says they told him I didn't think he had a chance of succeeding on any motion. But he doesn't say what the basis would be. Or, I mean, it was a very general statement that I didn't think he had a basis for a motion. Your Honor, what he says is that he didn't see any basis for suppressing the tape recording under the wiretap statute. He refers specifically to the wiretap. To the wiretap. That's absolutely correct. Now, the wiretap statute, there only is one suppression section in the wiretap statute. 2515 is the suppression remedy. And it says, it's just a short section. It says, unlawfully recorded, unlawfully made recordings are inadmissible. That's 2515. 2511 lays out what's lawful and what's unlawful under the wiretap statute. There's only one relevant section of 2511 here, which involves private, one-party consent recordings. That's 2511 2d. Yes, but he may not have. I mean, it appears from, as your opponent says, that he was specifically asked this question. He didn't put it in his declaration. There's nothing in his fairly extensive records that suggests that he looked at it. So it may be that the reason he thought there was no basis was because he didn't think about this. So he thought there was no basis. Now, if so, I guess the next question is, do we, I guess what you're going is that it's a credibility determination, and are we then bound factually by the district judge's conclusions about what his motivations were? Do the motivations matter? I don't think, it's not exactly the motivations. He may have had, any defendant who wants to withdraw a guilty plea at some level, the motivation is they don't want to be sentenced, they don't want to go to jail. It's the credibility findings about what had happened between him and counsel, because defendant doesn't say, defendant files a declaration, too, and defendant doesn't say, I wasn't advised about a 2511 2d suppression motion. What defendant says is counsel even never mentioned the concept underlined of challenging any of the government's evidence for any reason. That is, it's a blanket statement. He also says, never talked about willfulness, never talked about the state of mind requirement. It's a, what defendant actually says in his sworn declaration is there was no discussion of anything, and that's contrary to what Mr. Carlton says, and that's the one Mr. Carlton says is, he is referring to 2511. He doesn't say it, granted. He doesn't say 2511 2d. He doesn't say Title III of the Omnibus Safe Streets and Crime Control Act of 1968. He just says the wiretap statute. I only, I think there's only one. But it's, what the. Suppose he was wrong, and he got a better lawyer. Well, but that's not, it has to be deficient performance of counsel, erroneous advice. The fact that another lawyer comes in and says, as a strategic matter, you know, I think we should roll the dice on this suppression motion, that doesn't constitute. Well, he says, I think you've got a good basis for a suppression motion. But that's. The first lawyer says to you, there's no basis for a suppression motion. The second one comes in and says, you've got a good basis for one. And you don't even have to be right. It just has to be a plausible basis for a suppression motion. So why, you know, and the client says, you know, if I've got a plausible basis, my first lawyer told me I didn't. If I have a plausible basis, then I'd like to withdraw the plea. That's not exactly what the, the Davis case talks about what happens when there's bad advice from counsel. And the issue there is there was constitutionally deficient advice from counsel, and the Court said that's enough. Maybe we have a non-Davis case. Well, I think what you need is. The rule is that you can withdraw if you've got a plausible reason. You know, as long as it's before sentencing, you're supposed to look at it liberally. It's supposed to be a rule that somebody comes in and he's got a reason, a decent reason to withdraw. And his reason is, my first lawyer said, I don't have any basis. You know, you're guilty. Second lawyer comes in and says, no, you do have a basis. Now, isn't that a good reason to withdraw a plea? Not unless, not unless something is changed. It's just that. Not changed if he has a new law. Nothing in the law. I mean, if something in the law had changed, if there was new evidence, that's. That would, that's, that's obviously. The U.S. attorney's office would be in a terrible shape of taking and setting up plea agreements if you kept changing lawyers until you got one who would come up with a plausible defense. That could go on forever, couldn't it? Well, that's absolutely right, Your Honor. I think that's what, in the Hyde case, what the Supreme Court is getting at, that it can't just be a sort of change in the wind and you have a different, your new counsel has a different view. It has to be not just that the new counsel says it's plausible. It has to be, it was bad advice, erroneous. Well, but wait a minute. You're switching over from, and this is, I think, the fine line between erroneous and constitutionally deficient. They're not the same thing. And even if we don't say that plausibility is enough, isn't error enough even if it's not constitutionally deficient error? Well, that comes out of the, that does come out of the Davis case, Your Honor. And in that case, I actually think the standard under Davis is constitutionally deficient. I don't think the court was there creating a new, lower, erroneous standard. Because in that court, the district court already found it was constitutionally deficient advice. And the question was whether prejudice was required. Davis says no. But Judge Breyer, in his opinion for the court, says, he starts out by explaining constitutionally, it was constitutionally deficient advice was found by the district court. And then he uses the phrase erroneous advice later in the opinion. He switches to it. But he doesn't, he doesn't explain why he's switching to it or the court sees any difference. So I don't think Davis creates a lower standard. Here, I actually don't think it matters. And that's what Judge Fischer said, that even under a somewhat looser erroneous advice standard, you'd get to the same result here. And that's really, I think, where Judge Fischer's credibility findings, they matter. Because it has, we have to believe what the defendant is saying. And this declaration just isn't believable. It just is not plausible on so many levels. Well, I don't understand what's not plausible about this issue. His lawyer doesn't say that, you know, I, well, even if he did say, you know, I told him, what he said is I told him I didn't see any basis. Well, that's plausible, what his lawyer said. He didn't see any basis. And then he gets another lawyer who comes in and says, yes, there is a basis. You know, there is a basis for suppressing this statement, which is critical. And if I had been your lawyer, I would have told you, you know, you've got a good basis. Now, you may not want to gamble on it, but there is a good basis. And do we know that it's not a good basis? Well, I think we do know that. Well, we know Judge Fischer might say it's not a good basis. And I think that's well supported. And let me just say. Tell me why it's well supported that this is not a good basis. Well, there's never been any evidence put forward that Mr. Palacano had a criminal or tortious purpose in making this recording, the recording of him and Mr. McTiernan. There's just been. Well, what is alleged? Is it just alleged generally that there was a criminal or tortious purpose, or was there some specificity to the allegation? Well, as I understand, they've said a couple things. They've said that the recording itself, the content of the recording talks about illegal activity, about wiretapping. And they've said that making the recording was a violation of California law. Now, that latter point, making the recording violates California law, that was rejected by this Court in the Sussman case, Sussman v. ABC, where they said the fact that a one-party consent recording may violate California law doesn't mean the purpose of making the recording was to violate California law. So that's the Sussman case. And with respect to the content of the recording, the fact that it describes illegal activity, that is different from that the purpose of the recording was for a criminal purpose. As I understand, the purpose would be to use the recording itself for some kind of extortion or bribery or something. I think that's the most obvious example. And there's just been no showing. This recording was made back in 2000. Did Mr. Pelicano ever use the recording to attempt to blackmail Mr. Matiernan to do anything with it? There's no evidence of it. Well, the adversary seems to think that as the ongoing Pelicano story develops, that something may turn up to indicate tortious or criminal. But that's – I mean, he doesn't have the right to just sort of wait it out and see what happens. He would have had the right to take discovery, wouldn't he? He would have had the – well, he would have gotten – there was an issue about discovery, and there was an issue about the 302 from the agent, the investigative report from the agent about the phone call. I don't think he would have been entitled to just sweeping discovery of everything in the Pelicano case. This isn't the Pelicano case. He would have had the right to, I guess, subpoena Mr. Pelicano, who could have taken the Fifth, and likely would have, we don't know. Well, he did try to do that. He did take the – oh, the other case. That's in the other case, Your Honor, that Mr. Pelicano did take the Fifth. Well, would it be necessary for Matiernan to show how this would affect him directly as a criminal or tortious? Yes. It's not enough to show – and that's – the Trafficon case from the Sixth Circuit, I think, is indicative of this. It's not enough to sort of show Mr. Pelicano is a man who's been convicted of a lot of crimes and charged with a lot of crimes and not convicted of a lot of crimes. In the Trafficon case, there was a recording made by a mob boss involving a bribe that the mob was paying to then-sheriff Trafficon. And the court said that's not – the fact – we don't know what they were going to do with this recording. There's no evidence about what was going to happen with the recording. The fact that the recording involves a bribe, involves – the content of the recording involves unlawful activity, just isn't enough to show a criminal or tortious purpose. It was the same kind of speculation. Well, they could have used it to inform blackmail Trafficon later. They could have used it to enforce the terms of the bribe later. But what about this notion – I mean, there are essentially two possibilities other than that he intended to use it for blackmail or something. One is that he just likes to take everything, and the other is that he was doing it as part of his business or scheme. And – i.e., because he doesn't like to take notes, so he has records of what he's doing. So he knows that if he – in order to do his next wiretap, he has to know what he promised to do. And so he's using these tapes. And that's not implausible. It's certainly plausible. And you seem to be saying, well, that wouldn't – you're saying that wouldn't be a reason? I mean, I tend to think that if the government was on the other side of this trying to prosecute him for the wiretaps, it would be taking the opposite position. It doesn't seem like a crazy theory to me. Well, there's no doubt that these conversations are evidence of criminal activity. Yeah, not just evidence. They are being – Well, they're records of criminal activity, because any recording is a record. The problem with the argument that because it's a record of criminal activity, it might be in furtherance of a conspiracy or a criminal enterprise, the problem with that is any recording is a record. And if you're discussing criminal activity on the recording, it's therefore a record of criminal activity. So in any case – No, but the question is, is he doing it for that reason, to have a record? But there's – I mean, any time – I mean, I think at a certain level, any time someone makes a recording of a conversation, the purpose is to make a record of that conversation. And the question is, for what purpose is that record being made? So it's just to say, well, his purpose was to make a record. It's not going to be used in the criminal activity. Well, but there's no evidence that – there's no evidence – Well, I mean, I think we're getting well, well ahead of the case. Well, but the question is, are you disputing the theory or are you disputing that there's evidence of the theory? I think here, in this case, we're disputing that there's no evidence put forward, none, that there's a criminal or tortious purpose here. In fact, some of these recordings may be used for that purpose with clients and some may not. That's right. There's a lot of – I mean, there is – there are recordings of all kinds of innocuous calls that Mr. Pellicano made to 411, to his family and so forth, that obviously have nothing to do with nothing. But the question is, how much of a burden does he have at this point? The burden – the burden on the suppression motion is he has to show by a preponderance that it may – We're not on the suppression motion now. What we're on is the motion to withdraw the plea so we can make the suppression motion. Right. No, exactly. The suppression motion hasn't been filed. So we're ahead of ourselves to sort of deciding the suppression motion. But whether it's a plausible theory does turn on what his burden would be under the suppression motion, which is to show by a preponderance that it was either the primary purpose of the recordings or that it was the – an indeterminate factor in making the recordings. So it can't just be that some purpose, any purpose – it doesn't have to be the only purpose, but it has to be primary purpose or it has to be a determinative purpose. And that's the Vest case, which the defendant's side sets that out in some detail. The Dale case from the D.C. Circuit picks up on that. That's been the standard under the Wiretap statute. But let me back up for a moment, and I think I'm past my time, just for one second, to just say, to even get there, you do have to get past the district court's credibility findings, which are clearly erroneous, and which should be – Tell me exactly why that's true. Why the credibility findings? Yeah. I mean, suppose this was a good reason, but his motive was he didn't like the sentence. Suppose this would otherwise be a good reason, but his motive was he's now finally figured out he's going to jail, he doesn't like it. Well, it's not – it's not just – I think the district court's credibility findings are based on all the evidence the defendant put forth in his own signed sworn declaration to the district court. It is, as the district court found in parts, ludicrous, absurd, these contentions about what Mr. Carlton coached him to say, representations about what went on in the practice session. Are you saying that it goes to whether he – why he's filing the motion or whether it's true that Mr. Carlton didn't tell him this? To what Mr. Carlton said or didn't say. That it just – what he's saying simply cannot be believed. The district court says she finds his statements about Carlton's advice not to be credible. Did she find that Mr. Carlton did discuss this with him? No, she didn't. She finds – I think what she finds is that the defendant's contention that it wasn't discussed is not credible, and that the – and therefore, we're left with Mr. Carlton's statement that he discussed suppression under the wiretap statute. It's true. These credibility findings are all on paper, weren't they? I mean, did anybody actually testify? There was no live testimony. It was just declarations. It was just declarations. The district court found that an evidentiary hearing wasn't required because the declaration was implausible on its face. But why is it? It doesn't seem implausible on its face. So essentially, he's – this one, I understand it was mixed up with a bunch of other stuff, and maybe the problem was she just wasn't believing anything he said. But I mean, that's a perfectly reasonable – that is a perfectly reasonable position for the district court to take. The district court's not – a defendant's not entitled to come forward and lie on points A, B, C, D, and E, and then say you must believe me on point C because you can't rule out, based on the other declaration, that what I'm saying is a lie. I mean, and that's really a defendant's position. At the end of the day, the defendant's not contending anymore that the things he says on these other things are credible. He's not – he's not pushing them anymore. He's not challenging the credibility findings on those points. But he's saying we can't logically rule out that this didn't happen the way I say it did, now say it did in the – back in the district court. But one thing we haven't mentioned in your way over your time, but just to ask one last question, her main basis for not believing him, or a major one, was the Rule 11 colloquy. That's correct. Is that a good basis? I mean, in the sense that we know, of course, that – I mean, when he said, for example, do you have any defenses, he said, no, I don't. Well, obviously, if he hadn't been told them and wouldn't know about them, so he wasn't lying. He just didn't know. Of course that's true, Your Honor. But let me – let me point out what the defendant says in his declaration with respect to defenses. It's not just that he says, not 2511. He says, never told about any possible challenge to government evidence. He also says never – defense counsel Carlton never mentioned a word about wiretapping. So that's state of mind. That's attacking the government's evidence. I'm hard-pressed to think of what's left in terms of a defense to this charge. So when – so I think, taken in that light, when she – when, at the Rule 11 colloquy, the district judge says, have you talked about defenses? Well, the defendant says he was – they never talked about state of mind. They never talked about attacking the government's evidence. And he says, yes, we talked about defenses. I'm sure that there are possible – maybe you can come up with the defenses, but it's hard to know what's left. So I think those statements take on a different character when viewed in what – when viewed in the light of what defendant is telling the district court at the withdrawal stage. So thank you, Your Honor. Sorry about that. Thank you. The proof of the criminal purpose of defense law in this case stems from the government's characterization of Mr. Pellicano's conduct, that is, that it was permeated with criminal conduct. That's what they said in the search warrant to search his premises. They said that all recordings to be seized are evidence of criminal conduct. They made this manifest in their now-successful RICO indictment, which covered a seven-year period of permeated criminal conduct. And, of course, the phone call with Mr. McTiernan was illegal in violation of specifics of the criminal purpose. It couldn't have been more perfectly stated by Mr. Pellicano himself at his own trial where he said he – he's speaking to himself in the third person – he decided to record those conversations, you know, for inventory, for safekeeping, for, in effect, to remind himself of what he needed to do and what a client professed to need to have. Can you briefly – very briefly just discuss this credibility question? Does it matter? And why isn't it the case that since many of his contentions in the declaration were not believable, why isn't that a basis for not believing his contention with regard to the – his interaction with Carlton? Well, the – first, he said I was not advised of any wiretapping. I understand, but he also said he wasn't advised of other things. That's true. Right. That's true. Which we're not very aware of. And then, well, I think he's substantiated by the fact that we have a profound silence or a studied ambiguity in Mr. Carlton's response. As to this. Carlton is asked, did you – our position is that you didn't advise him of this, and he's told that on September 15th. But your basic position is this is believable even if everything else isn't. Absolutely.  And it is, again, the centerpiece of the motion. Believable as a matter of law so that we don't defer to the district judge on it. As a matter of law, I think the Court is clearly erroneous in saying that McTiernan's professed basis for withdrawing this plea, which is stated in his motion of September 10th, which was this reason, is plausible because he says it and his counsel does not refute it and there's no evidentiary hearing to it. We're talking about different things. What Judge Berusan is asking, as I understand it, is can we – where are you if we – why shouldn't we disbelieve your client's statement that Carlton didn't tell him anything about the wiretapping and the motion issue? He didn't tell anything. Carlton says, I told him that I did not see any basis for suppressing the tape recording under the wiretap statute, and I could not predict that any such basis would be discovered. Does it matter to your case whether he said that? Yes, it does matter because I think it's an admission given the counter-declaration. Remember, we're doing this without an evidentiary hearing on declarations. The declaration by Mr. McTiernan's successor counsel was I specifically asked Carlton through his attorney to answer this question, and that was putting him – Answer which question? That you failed to advise him of the 25112D defense. It was specifically stated as starkly as that at ER 233 and 234. Now, when he doesn't answer that and comes up with this very ambiguous answer that he put in his declaration stating that I couldn't predict that any – It's a classic instance in which you'd want to have an evidentiary hearing and put Mr. Carlton on the stand and said, you said this, you know, did you in fact tell him this? That would have been as simple as that because we had competing declarations. But the response – and the response was I told him about all of the wiretap statute defenses, whatever they were. It wasn't tape. He encompassed it, did it not? I don't think he said that. I think he said I was familiar with the wiretap statute. And the specific wording is very curious the way he said it. He says I couldn't predict that any such basis of wiretap suppression would be discovered. In other words, to his defense, he had very little time to deal with this case. Mr. McTiernan saw him on March 4th. They were handed an ultimatum to plead guilty on March 21st and to do so within three days. So there was no file, as I said, no research indicating any research on this topic. He was relying on his general familiarity. He obviously wasn't familiar with this, but he says in his affidavit I told him that if there – I doubt that something could be discovered in the future. Well, he's wrong on that. He was just flat out wrong. The 25112D defense was there and before him. Because it's also plausible that he looked at it and found that it would not apply. I mean, you're saying that it absolutely does apply, and I'm not quite sure of that. Well, I would just say that taking the record as it is, where Mr. Carlton is asked point blank, I actually stated to him you did not advise him of this defense, and then he files a declaration six days later where he just doesn't answer the question. He certainly well knew what was at issue, because the motion had been on file, he was specifically asked this question, and he doesn't answer it. So at a minimum, there had to be a hearing before you could discard what McKeeran was saying and to just accept Carlton's comment as covering the subject. I'd ask the Court to remand the matter for permission from Mr. McKeeran to withdraw his plea, and as I alluded at the outset, given the district court's adamancy on rejecting this issue, that the Court consider remanding to a different judge. Or to have an evidentiary hearing? I'm sorry? Or to have an evidentiary hearing? Well, our first position is he ought to be allowed to withdraw his plea. The fallback would be for an evidentiary hearing on the topic. Thank you. Thank you. Case discharged. You will be submitted. The Court will take a short break before the next case.
judges: Reinhardt, Berzon, Miner